# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

**TINA MARIE CHAMBERLAIN,**

      Plaintiff,

v.

**CAROLYN W. COLVIN,** Acting
Commissioner of Social
Security,

      Defendant.

**No. 14-CV-4004-DEO**

**ORDER**

_____

This matter is before the Court pursuant to Tina Chamberlain's [hereinafter Ms. Chamberlain] application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. After considering the parties' arguments, the Court took the matter under advisement and now enters the following.

## I. FACTUAL BACKGROUND

Ms. Chamberlain was born June 11, 1978, and was 31 years old on her alleged onset date. She attended school through the 11th grade, completely in special education classes and courses. She is 5'3" tall and weighs 170 pounds. Ms. Chamberlain has moved around most of her life, including

stints in Kansas, Connecticut, Montana, and currently in northwest Iowa. She is not married but lived with a roommate at the time of the administrative hearing. She has two children but does not have custody of them. She reported a history of sexual abuse, giving rise to the mental disorders discussed below.

Her work history is sporadic. She has tried to work, beginning when she was age 16, at various jobs, but none lasted long. Most recently, she worked a variety of jobs through a temporary agency, her longest employment as an assistant for a disabled person.

Ms. Chamberlain bases her alleged disability on a number of issues. Plaintiff reported that her disability is because of scoliosis (a curved back condition); Post Traumatic Stress Disorder; anxiety; sacroiliitis (a type of low back inflammation); asthma; hypothyroidism; anxiety disorder; bipolar spectrum vs major depressive disorder; recurrent, moderate, postraumatic stress disorder; panic disorder with agoraphobia; generalized anxiety disorder; obsessive compulsive features; and "lower IQ and learning disability issues." The ALJ determined that the Plaintiff had the

following impairments that were severe impairments, right sacroiliacitis, anxiety disorder not otherwise specified, bipolar spectrum vs major depressive disorder, recurrent, post-traumatic stress disorder, and lower IQ and learning disability issues.

**II.  PROCEDURAL HISTORY**

Ms. Chamberlain applied for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385 on December 27, 2010, and January 5, 2011, respectively, alleging an onset date of March 5, 2010. Plaintiff's claims were denied initially on February 7, 2011, and upon reconsideration on March 23, 2010.  On October 24, 2012, following a hearing, an Administrative Law Judge (ALJ) found that Ms. Chamberlain was not under a "disability" as defined in the Act.  Ms. Chamberlain appealed the ALJ's decision to the Appeals Council, who denied her appeal on December 18, 2013.  Ms. Chamberlain filed the present Social Security appeal on January 13, 2014.

The ALJ set out the issues in Ms. Chamberlain's claim:

> [t]he issue is whether the claimant is disabled under sections 216(I), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(I) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 3, 2011. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

Docket No. 7, Tr. 15.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment"

that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the requirements of their past relevant work, and (5) determination of whether, given a Plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(i). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can

still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) *abrogated on other grounds* by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide

"evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Chamberlain does not have a history of substantial gainful employment since the alleged onset date.

The ALJ stated that Ms. Chamberlain has the following combination of severe impairments: right sacroiliacitis, anxiety disorder not otherwise specified, bipolar spectrum vs. major depressive disorder, recurrent, post-traumatic stress disorder and lower IQ and learning disability issues (20 C.F.R. 404.1520(c) and 416.920(c)).[1]

However, the ALJ considered Ms. Chamberlain's impairments individually and combined and found that she did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

---

[1] The ALJ discounted allegations that Ms. Chamberlain suffered from panic disorder and obsessive-compulsive features. The ALJ also noted non-severe impairments including hypothyroid and asthma.

> [t]he claimant does not have an impairment
> or combination of impairments that meets or
> medically equals the severity of one of the
> listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525,404.1526, 416.920(d), 416.925 and
> 416.926).

Docket No. 7, Tr. 17.

The ALJ considered Ms. Chamberlain's mental impairments using the "paragraph B" criteria and the "paragraph C" criteria as set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926), and determined that Ms. Chamberlain's mental impairments did not meet either set of requirements. Docket No. 7, Tr. 18.

The ALJ went on to consider residual functional capacity and adopted the state agency consultants' conclusions. Docket No. 7, Tr. 18. To support that finding, ALJ discussed inconsistences in the record regarding contradictions in statements made by Ms. Chamberlain during her examinations by Dr. McNaughton and statements made during her examinations by nurse Kathryn Nelson. See Docket No. 7, Tr. 19-20. The ALJ also found significant the fact that Ms. Chamberlain failed to comply with prescribed medications. Docket No. 7, Tr. 21.[2]

_____

[2] Ms. Chamberlain alleged she could not afford the medications.

Although noting it was possible that Ms. Chamberlain's condition had deteriorated in 2012, the ALJ concluded that Ms. Chamberlain had made questionable and usupported claims during her examinations in 2012. Specifically, the ALJ stated:

> [t]here is no indication that Dr. McNaughton has conducted any validity testing to determine the reliability of the claimant's current presentation. Under circumstances such as this, where there is an individual seeking disability benefits, and where other mental health providers, including a provider at the same facility, have not remotely observed the level of symptoms presented, it is critical, if not essential to eliminate concerns that the current presentation may result from secondary gain motivations. Dr. McNaughton simply failed to do this. Accordingly, I must conclude that the medical and psychiatric record, viewed as a whole, does not demonstrate that greater psychiatric limitations than those identified above are warranted, and/or that the state agency examining psychiatric consultant's assessment is misplaced.

Docket No. 7, Tr. 21. On that basis, the ALJ discounted Dr. McNaughton's opinion regarding Ms. Chamberlain's work limitations. Id. at p. 21-22.

The ALJ then considered the Plaintiff's credibility under the Polaski standard, stating:

> [i]n making my residual functional capacity determination, I considered the claimant's alleged disabling symptoms, including pain, and the allegations regarding her ability

to work. However, due to the lack of medical evidence and the inconsistencies in the claimant's statements and actions, I am unable to afford her allegations full weight. 20 CPR 404.1529(a) and 416.929(a) state that symptoms must be supported by objective medical evidence in order to establish "disability." As previously detailed, there is a lack of medical evidence indicating that the claimant's impairments are as disabling as she claims. There simply is not enough objective evidence to make her allegations readily believable. However, I do not rely solely on objective evidence and medical opinions in assessing the reliability of the claimant's allegations. Inconsistent statements and actions also undermine her credibility. As explained above, the inconsistency of the claimant's psychiatric presentation and claims, over time, raise serious concerns regarding the reliability of her allegations. The claimant's current psychiatric presentation appears newly developed, only after her efforts to obtain support for her disability claims were denied initially and upon reconsideration, and only after the state agency examining psychology consultant, Dr. Molly Earlywire, and a psychiatric nurse could not find clinical grounds supporting her disability claims (Exhibit 16F, pp. 11,13). On top of this, the claimant inconsistently advised Dr. McNaughton that she had been hospitalized for panic attacks twice, a claim she had denied earlier. She also advised him that panic attacks and job slowness resulted in her having multiple jobs. However, she inconsistently advised the state agency examining psychiatric consultant, that this job history was the result of her moving frequently and boredom. These inconsistencies are difficult to reconcile, particularly when

> the claimant would not even fill a $5
> prescription for psychotropic medication,
> as Dr. McNaughton recommended... In sum,
> there is ample reason to be cautious
> accepting the claimant's allegations in the
> absence of substantial objective medical
> support.

Docket No. 7, Tr. 22-23. The ALJ similarly gave little weight

to the opinion of third party source, Chad Bol, and the ALJ

found the that the third party report of Mr. Black did not

support Ms. Chamberlain's claim.

Based on his RFC, the ALJ concluded that Ms. Chamberlain

could return to past relevant work. Docket No. 7, Tr. 23.

Specifically, based on the testimony of the vocational expert,

the ALJ concluded that Ms. Chamberlain could return to work as

a home health aide or a bus driver. Id. The ALJ concluded

that:

> [t]he claimant has not been under a
> disability, as defined in the Social
> Security Act, from March 5, 2010, through
> the date of this decision (20 CFR
> 404.1520(f) and 416.920(f)).

Docket No. 7, Tr. 23.

## III. STANDARD OF REVIEW

This Court's role in review of the ALJ's decision

requires a determination of whether the decision of the ALJ is

supported by substantial evidence in the record as a whole.

See 42 U.S.C. § 405(g); Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question. Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (citing Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007)). This Court must consider both evidence that supports and detracts from the ALJ's decision. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) (citing Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)). In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision. Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004). The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice." Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. Lauer v. Apfel, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse

his/her decision.  Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV.  ISSUES

Ms. Chamberlain argues that the ALJ improperly gave controlling weight to the non-treating sources, failed to obtain an IQ test, failed to correctly evaluate the severe impairments, improperly discredited the treating source, and erred in citing past relevant work not supported by the record.  The Court will consider these issues below.[3]

## V.  ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act].  The Act defines a disability as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

---

[3]  During the hearing, the parties also argued over Ms. Chamberlain's non-severe impairments, and whether the ALJ correctly considered them.  The Court gave the parties leave to supplement the record on this issue, which they did.  See Docket Nos. 18 and 19.  While the Court appreciates the parties willingness to supplement the record, the Court is persuaded that there are other dispositive issues in this case, which will be discussed below.  Accordingly, the Court will not consider the issue related to Ms. Chamberlain's non-severe impairments in any great detail.

> for a continuous period of not less than 12
> months . . . .

42 U.S.C. § 423(d)(1)(A).

## A.  CUT AND PASTE RFC

In many, if not most, social security appeals, the Plaintiff's argument is factual and based in large part on the medical evidence in the record.  However, this case, which does contain an extensive discussion of the medical record, also contains several rather pointed, and simple, legal arguments.  From that later category, the Plaintiff first argues the ALJ merely copied and pasted his residual functional capacity evaluation from opinions of the state agency consultants.  The Plaintiff argues that copying and pasting an RFC is an error.[4]

It is undisputed that the ALJ did copy and paste the RFC from the consultant's work.[5]  Thus, the question is whether

_____

[4]  By 'copy and paste' or 'cut and paste,' the Plaintiff means that the ALJ took the consultant's conclusion word for work from the medical record and put it in his own decision. The word paste, used literally, would mean to glue.

[5]  The Defendant admits that the ALJ copied and pasted, stating, "[t]he fact that the ALJ decided to use the wording contained in an expert opinion is a testament to the ALJ's exactitude, not a detriment."  Docket No. 13, p. 6.

that is an error.  The Defendant argues that it is not.  As stated in their its brief:

> [a] residual physical functioning finding is solely the province of the ALJ.  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); SSR 96-5p... An ALJ is entitled to make any finding that is supported by substantial evidence.  See <u>Arkansas v. Oklahoma</u>, 503 U.S. 91, 112-13 (1992).

Docket No. 9, p. 6-7.

The Defendant's own argument betrays the ALJ's error.  As stated by the Defendant, the residual functioning capacity is <u>solely</u> the province of the ALJ.  Accordingly, the ALJ cannot sub-contract or assign the creation of the RFC to a consulting expert.  Even if the ALJ generally agrees with a consultant's opinion, the ALJ has an obligation under the rules to add some nuance to their RFC.  As stated in the Plaintiff's brief:

> [c]ontrolling weight may only be given to opinion from a treating source.  20 CFR §§ 404.1527(c)(2), 416.927(c)(2). Controlling weight may not be given to nontreating source opinions.  POMS DI 24515.006(B)(1)(c) Evaluating Nontreating Source Medical Opinions.  "We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., <u>Jenkins v. Apfel</u>, 196 F.3d 922, 925 (8th Cir. 1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement)."  <u>Cox v. Barnhart</u>, 345 F.3d 606, 610 (8th Cir 2003).  So, the one-time

> CE reports are not even entitled to be
> "substantial evidence," yet this ALJ gave
> them controlling weight.

Docket No. 9, p. 8-9.

In his RFC, the ALJ took four paragraphs verbatim from the opinion of Dr. Douglas Martin. See Docket No. 7, Tr. 350, and compare with Docket No. 7, Tr. 18. Dr. Martin examined Ms. Chamberlain one time in January of 2011. Dr. Martin did not have access to her medical history, and certainly did not have access to her subsequent treatment notes from Dr. McNaughton. Nor, was Dr. Martin privy to the evidence collected during the ALJ's own hearing. The ALJ then took one paragraph, verbatim, from the opinion of Dr. Michael Baker. See Docket No. 7, Tr. 364, and compare with Docket No. 7, Tr. 18. Dr. Baker did have more access to Ms. Chamberlain's prior history, but of course, had no way to know about her subsequent treatment by Dr. McNaughton. Nor did Dr. Baker have access to the testimony from the ALJ's hearing.

There simply is no way that the consulting experts had all the information that the ALJ had. The parties agree that it is for the ALJ and the ALJ alone to develop the RFC based on the evidence in the record. In this case, there simply is no dispute that the ALJ allowed the consultants to fashion the RFC, even though they had incomplete access to all the

relevant evidence. This error is even more glaring considering that the ALJ admits that Ms. Chamberlain's condition [apparently] changed in 2012 around the time she began seeing Dr. McNaughton. Because the ALJ did not form the residual functional capacity himself, and simply adopted the the RFC from the consultants' opinions, his RFC is not supported by substantial evidence and is in error.

### B. IQ TEST

The ALJ found that Ms. Chamberlain suffers from "lower IQ and learning disability issues." Docket No. 7, Tr. 16. The ALJ then never referred to Ms. Chamberlain's intelligence again in his entire opinion, other than to note that Dr. McNaughton also said she had low intelligence. The ALJ provides no source for his IQ finding, does not explain the severity of a 'lower IQ,' does not explore a low IQ's potential to be a listing criteria (§ 12.05C or otherwise), nor does he explore how the low IQ interacts with Ms. Chamberlain's other severe impairments.[6] Based on this vague finding, the Plaintiff argues that the ALJ erred by not ordering an IQ test.

---

[6] The ALJ also notes that Ms. Chamberlain has a high school equivalent education, but that is not supported by the record.

It is well settled that a social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record. See Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006). The claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. Snead v. Barnhart, 360 F.3d 834, 836 (8th Cir. 2004). The ALJ is not required to seek additional clarifying statements unless a crucial issue is undeveloped. Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005). A consultative examination for further testing is only necessary when the medical evidence in the record is inconclusive or somehow incomplete. 20 C.F.R. §§ 404.1519a(b), 416.919a(b).

The Defendant disagrees and argues that no IQ test was necessary. In making that argument, the Defendant relies on the fact that Dr. McNaughton did not order an IQ test saying, "[e]ven Dr. McNaughton, whom plaintiff sought out specifically to obtain a disability statement, apparently did not believe that he needed a diagnostic IQ test." Docket No. 13, p. 10. However, Defendant's own argument emphasizes the ALJ's error, showing that even the treating medical notes did not illuminate the severity of Ms. Chamberlain's low IQ. The Defendant goes on to discuss evidence in the record that Ms.

Chamberlain could function. However, as noted above, the ALJ already found that she suffered a low IQ. The question is the severity of the low IQ. The best way to determine that is through a test, which the ALJ failed to order.[7] This case is distinguishable from cases such as <u>Cox v. Astrue</u>, 495 F.3d 614, 618 (8th Cir. 2007), cited by the Defendant. Cases finding the ALJ did not need to order more testing almost universally have either (a) an IQ test already in the record (b) an indication that the ALJ considered other evidence relevant to IQ that the ALJ considered and used to form his (or her) opinion. This case has neither. It does not have a valid IQ test, nor does the ALJ discuss what evidence supports his conclusion regarding Ms. Chamberlain's IQ.

Based on the RFC discussion in the previous section, and the ALJ's failure to order an IQ test, it is clear that the ALJ's decision is not supported by substantial evidence. Accordingly, the Court must remand this issue for further development of the record. Accordingly, because remand is

---

[7] "Standardized intelligence test results are essential to the adjudication of all cases of mental retardation that are not covered under the provisions of 12.05A." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(b); DI 24515.055 Evaluation Of Specific Issues Psychological/Psychometric Testing.

clearly necessary, the Court will only briefly consider the Plaintiff's other arguments.

### C. Severe Impairment

Plaintiff next argues that during the hearing, the ALJ incorrectly defined the term severe impairment. It is true that during the hearing, the ALJ seemed to incorrectly state the severe impairment standard. (The Defendant admits as much in its brief, but argues that what the ALJ said during the hearing was not what the ALJ actually meant. See Docket No. 13, p. 13-14.) Regardless what was said during the hearing, in his decision, the ALJ, at least textually, applied the correct standard. Because the Court is convinced that this case must be remanded to further develop the record in regards Ms. Chamberlain's residual functional capacity and IQ as discussed above, the Court need not further consider this issue. Suffice to say that the ALJ needs to apply the correct severe impairment definition in any subsequent proceedings.

### D. Medical Evidence

The Plaintiff's next argument is that the ALJ gave controlling weight to the consultant opinions at the expense of the opinion of the treating sources. The Defendant argues

that the ALJ properly discounted the opinion of the treating physician for a variety of reasons.

It is beyond dispute that treating practitioners have the clearest insight into the medical conditions at issue in social security disability cases. As has been repeatedly stated:

> [t]he opinion of a treating physician: should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); see also 20 C.F.R. §404.1527(c)(2) and Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005). Even if not entitled to controlling weight, in many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted. SSR 96-5p; see Reed, 399 F.3d at 920; 20 C.F.R. §404.1527(c)(2). The ALJ must "always give good reasons . . . for the weight [he gives the] treating source's opinion." 20 C.F.R. §404.1527(c)(2); see Singh, 222 F.3d at 452. In the decision's narrative discussion section, the ALJ "must . . . explain how any material inconsistencies or ambiguities in the

evidence in the case record were considered and resolved."
SSR 96-8p.    Additionally, the opinions of an examining
physician should be given greater weight than the opinions of
a source who had not examined the claimant.    See Shontos v.
Barnhart, 328 F.3d 418, 425 (8th Cir. 2003), citing 20 C.F.R.
§ 404.1527(d)(1) (now 20 C.F.R. §404.1527(c)).

In the subsequent proceeding, the ALJ must consider the
above stated standard in accessing the opinion of the treating
physician.

### E.  Past Relevant work.

The ALJ found that Ms. Chamberlain had past relevant work
as a bus driver and as a home health medical aide.    In her
brief, the Plaintiff sets out why her (brief) past work as a
bus driver does not qualify as substantial gainful employment.
See Docket No. 9, p. 16-17.    The Defendant concedes that the
Plaintiff's analysis is correct.    See Docket No. 13, p. 19,
stating, "...plaintiff's earnings as a driver fell below wages
that indicate substantial gainful activity..."    The Plaintiff
also argues that her job as a home health aide was specific to
one patient and no longer exists.

The ALJ cited two examples of past relevant work.    One is
clearly an error.    As set out in the Plaintiff's brief,

"'[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.' SSR 82-62: Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, in General." Docket No. 9, p. 19-20. Finding two incidents of past relevant work and getting at least one of them wrong shows that the ALJ did not apply the type of diligence required in his past relevant work evaluation. The post-remand ruling by the ALJ must be supported by substantial evidence, including the ALJ's finding regarding past relevant work.

## VI.  CONCLUSION

It is clear the ALJ erred when he allowed the consulting experts to craft Ms. Chamberlain's residual functional capacity for his decision and by failing to develop the record regarding Ms. Chamberlain's IQ. The question thus becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for an award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992).

In this case, it is clear that the record must be further developed before any decision can be reached. **Therefore, the decision of the ALJ is reversed and remanded. On remand, the ALJ will supplement the record regarding Ms. Chamberlain's IQ through testing and will consider if her low IQ implicates a listing criteria. Further, the ALJ, rather than the consulting experts, will craft a residual functional capacity for Ms. Chamberlain. Additionally, on remand, the ALJ will properly weigh the evidence from the treating sources and guarantee that any past relevant work finding is supported by substantial evidence with specific citation to the record.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this

action.    Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 25th day of March, 2015.

Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa